If it pleases the Court, David Rosenfeld, on behalf of IATSE LOCAL 720, I would like to reserve three minutes for oral argument. I enjoyed the last argument only because boss was a case from our office. So I will report back. Good or bad? From the perspective of your office, is that case good or bad? Did you win or lose? We lost. We represented the union, or the trustees in that case. Okay. I didn't personally handle it, but I was involved in some of the discussions in our report, the spirited discussion. This case has some very interesting labor law issues in it. I'm a labor practitioner now for 40 years or more. I enjoy arguing these cases and briefing them. But it has these interesting issues, in my view, because the board lawyer tried this case and was very sloppy about putting on an adequate record in most cases. So I want to address the jurisdictional aspect of this case, which we briefed first in our brief, because I think that is the dispositive of virtually all of this case. And otherwise, this case will be read for some very difficult and, I think, destructive propositions. I want to address this from history. The cases that deal with jurisdiction over hiring hall requests, with almost no exception, arise in the construction industry where there's a multi-employer association, NECA or SMAFN or something like that. So the board has always found jurisdiction over the whole association by finding that there is at least one member of the association who meets the board's jurisdictional standards. Can you point to any case where the only issue was whether the union had breached a duty to the employees and didn't actually award any remedy other than that the union had to give something to the employee rather than make referrals to employers that did what you're talking about, looked at the jurisdiction over the whole group of employers? No. And the board has not come up with that, except in the limited circumstance where there is a multi-employer contract. But so here, the claim is against the union. The remedy is only between the union and the employee. There's no remedy as to any employers. So why does the board need jurisdiction over anything other than the union? Because the section that we're involved with, Section 8B1A, applies only to conduct directed at employees, meaning employees of an employer. So isn't it enough that it seems undisputed that one employer met that definition? That's true, but we don't know about all the rest of the employers, for example. But why does it matter? Because maybe the union discriminated against this plaintiff just as to that one employer. As long as there's jurisdiction over the union, why does it matter? I don't understand why it matters. Well, the board has already addressed this in the several cases we cited in our brief. In the old Fisher Theater case. Right. Fisher Theater had a remedy against, about referring people to employers and found things that the employers had done wrong in addition to the union. But there's nothing like that here. Well, that's a distinction between Section 8B1A and 8B2 that the board elides in its brief. But in Fisher Theater, and the other cases we've cited, the board expressly, the administrative law judge, as approved by the board, refused to grant a remedy as to those entities where the record did not establish that they were employers. For example, as we put out in the brief, there are lots of entities. But what remedy here was granted as to any employer? Well, that's another problem. The judge initially ordered a remedy that we would only have to produce information regarding signatory employers. But now the remedy is narrower or exchanged. No, it's broader. Well, it only relates to the two letters, correct? Yes. But what the board did was say, rather than go with this remedy that the judge said you need to provide it as to signatory employers, which I say is much broader than what the record. But there's not going to be any interaction as a effect of the remedy ordered here that involves the employers. All that is going to happen, if the union complies, is the union is going to give information it has to the plaintiff. There's nothing that involves the employers. So why does it matter? I mean, the board has jurisdiction over the union. Why does it matter how broad the list is? You could prove discrimination in part by inference from what happened to others. I mean, you can get discovery usually about more than the actual case. So I don't understand. I don't even understand your theory. Well, the premise that the board has jurisdiction over the union doesn't arise from the National Labor Relations Act. It has jurisdiction over the union because of the union's relationship with employers within the meaning of the act. For example, it has a relationship with the employees on this list. It's representing them or doing whatever it does when it sends things about them. It has an obligation to them not to discriminate against them. And the claim here is that the union did something wrong to this employee. It doesn't really have to do with the employers. Well, it does for two reasons. Let me give you two examples and quote the statute, because that will answer the question. There are many employers out there over whom the board expressly doesn't have jurisdiction, like public sector. So the question is, does the board have a remedy to tell this union, you have to provide information or deal with him fairly as to a public sector employer or a church organization or a tribal organization? And the board is very clear that in 8b cases against unions and 8a cases against employers, it has no jurisdiction and can't order remedy. Given that it has, there's at least one employer here that it has jurisdiction over. So once that happens, at least it seems to me, maybe you can correct me, but in general, if this was just a case of civil discovery and you're trying to prove a discrimination claim, you can often get information about what the employer did to other employees because it might help you figure out what they did to this employee. So it seems like once there is a basis for jurisdiction, because we know there's at least one employee, why can't the board give some information around it, whether there's jurisdiction over each of them or not, to help this employee figure out whether there's a pattern of discrimination? Well, that's not the board's theory in this case, that there's some discovery standard that if the board doesn't have jurisdiction over an employer, then it still has the right to order the union to provide information about public sector employers, the state of Nevada. Well, I don't think they've done that here anyway. So that's not an issue. No, they have, Your Honor, because again, let's go back to what happened. We know there's one employer of whom the board has jurisdiction, Las Vegas. The Tropicana Las Vegas. We know that that entity only exists, as far as the record reflects, from January of 2014 on. That's the date of the contract. Before that, it was a different Tropicana. So that's the only entity. We know that this union deals with many other entities and employers. We have no evidence about whether they're public sector, whether they meet the commerce jurisdiction. We don't even have evidence about whether most of them have an exclusive hiring arrangement. Well, okay, but the union at one point gave the names, right? You gave some list of names, and then the next request was you didn't give me enough information because I can't contact them. You only gave me their names. So who were those names? I mean, at some point, you thought you could give this list of names. No, and we're not, to be clear, what this fight is about is not the names. The fight here, the argument, is about the phone numbers and the home addresses. So did you give names of people who are only working for public entities? So you're trying to say this is about tribes and public entities, but is there any evidence of that? No, Your Honor, what we gave them was a list of referrals to one entity, and that was one show he'd asked about. He wasn't satisfied with that, but that was given to him fairly promptly after he asked for it. It was just the names who got referred to jobs. And we're not arguing about names because we agree that nobody can reasonably determine whether they were referred properly without having the names. What we're arguing about is the more private information that we've always kept private, which are the phone numbers and the home addresses. And I want to go back to the statute because we're all sort of ducking the statute here. The statute defines employee from 29 U.S.C. section 1523. The term employee shall include any employee and shall not be limited to employees of a particular employer. So I work for Tropicana Las Vegas, I'm an employee. I look for work at Tropicana, I'm an employee. I look for work at another employer over whom the board has jurisdiction, I'm an employer. But what the statute also says, after going through some exclusions is, and this was added in 1947,  of an independent contractor employed as a supervisor and so on. Or any other person who is not an employer as defined, who is not an employer. So the statute carefully excluded someone from being an employee unless the employer is an employer within the meaning of the act, meaning Tropicana Las Vegas. So if Mr. Elias, this is in section 1523, it's a definitional section of employee. So if Mr. Elias wants information about what's going on with an entity that's not an employer, within the statute he's not an employee for that purpose. He may be an employee for other purposes. And that is much more prevalent today because you have a lot of public sector unions, AFSCME and SEIU, that have large public sector memberships and they'll have a small private sector membership. And under what the board is suggesting here, once there's jurisdiction over that local, which has a large public sector, it can regulate its dealings with those members vis-a-vis the public sector employers, the Railway Labor Act employers, and all other employers, even if the board doesn't have jurisdiction. And that's the fundamental problem here. Is there any evidence here that what you've been ordered to give is about public sector employees? No, but what we know is that, again, the judge was more careful. He said, only give it as to signatories. And we only have really one signatory that's relevant, although there was evidence of some other contracts. But the board said, we're going to use our traditional remedy, which was we're just going to say, give what's encompassed by his letter. And his letter asked for all referrals. And again, the burden is on the board to establish jurisdiction. And we made that clear when we tried the case, our affirmative defense was a lack of jurisdiction. And all that the board established was jurisdiction from 2014 on of Tropicana Las Vegas. So there's no, remember, Your Honor, that his request goes back, his initial request went back to 2012. He wanted to know who had loaded out a show, not at the Tropicana, but at the Venetian. Had nothing to do with the Tropicana. Do you object to the scope of the recommended order by the ALJ at SCR 15? Yes, for other reasons. Yes, but- I thought you did, but I just wanted to make clear. But I wanted to be clear that what the board did was mess it up more, frankly, by simply saying, give what's in the letter. Because the letter said, I want all referrals, and the board made no effort to prove that- And you don't think we should read the board as incorporating the ALJ's clarification of what was ordered? I don't know how you do that, because they expressly said, we're substituting this for the judge's order. Well, but there's a portion of the ALJ decision, apart from the order, that interprets the letters, is there not? That's right, and he interpreted it differently, because he parsed out some of the sentences saying, remember- But isn't that, wasn't that adopted by the board when they adopted the findings? They just didn't adopt the order as I read it. That's right, so they just said, whatever- So why are we talking about, I mean, shouldn't we be assuming the board is adopting that interpretation of the requests? We don't know what they're doing, because all they're doing is rejecting the ALJ's- Okay, well let's assume the board is adopting the ALJ's interpretation of what the letters requested. Then what is the problem? Well, the problem is that, is all the issues we've addressed. For example, he's asking for information, the six month issue, let's just address that. So we've made it, we've brought it to the court's attention, that the board has in some cases said, you get to go back five years. We understand that. In other cases, the board has said, you only go back six months. The board has not resolved that question. You're talking about the statute of limitations now. That's right. So, didn't he bring the request within six months of when he was denied these lists? No, I wanted to correct myself. We understand that the board charge was filed within six months of the February request and the April request. What we're saying is that the board as a remedy in cases has said, we will only order a remedy of getting information going back six months from the date of the request. So the two cases you cited for that, both had situations where in one of them, only six months was requested. And in the other, I think the parties had stipulated to six months. So I don't understand how, if the only two cases in your brief that you have for the board has limited it to six months are only those two, it's not very persuasive. It is persuasive, not because the board adopted that, and because I think one of them refers to another. There's a third case where there's a reference to the six months, and the board, in the other case- Even so, the six months, he did this within six months of being not given the information he wanted. If he eventually files a discrimination suit using the information, you may be able to say, look, it's been too long, it's a statute of limitations defense. But I don't understand how you have a statute of limitations defense right now about giving this list when it was requested within six months, even on your theory that the statute of limitations is six months. Yeah, the third case is Millwright's Local 102, which we cited, there's a six month discussion in that case. Because otherwise, what the board is saying is that you sort of have an unlimited right to go back forever when there is no remedy beyond the six months before the board or in the courts to resolve these questions. And my only point here is that we have a line of cases saying six months, a line of cases that has no limit, and this case should be remanded to the board to explain why it is in some cases they approve six months. In this case, they didn't address that issue. I'll give you one minute for rebuttal. Thank you. Good morning, may it please the court. Eric Weitz on behalf of the National Labor Relations Board. We've seated five minutes to the interviewer in charging parties, so I'll do my best to keep track of time. I'd like to begin just by taking a step back from the arguments that the union is making to emphasize what's really at issue in this case. The board found a single unfair labor practice, which is that when the Eliases submitted information requests regarding this exclusive hiring hall, the union arbitrarily refused to provide the bulk of the information. And so what the union has done here is to improperly frame this as a jurisdictional question in order to place an impractical burden on the board to determine the jurisdictional status of employers who no one even knows the identity of yet, because the union does not provide the information, and that's simply not a jurisdictional question. As we point out in our brief, section 8B1A involves a labor organization, which it is uncontested the union is a labor organization operating an exclusive hiring hall. And it's duty of fair representation to statutory employees. It's been uncontested throughout this litigation until the union's reply brief that the Eliases were statutory employees, because the status of an employee does not vacillate based on what potential employer they might be referred to. If you are a user of an exclusive hiring hall, which is referring employees to employers, you are a statutory employee, even if you are not currently employed by any entity. So I would point out that the union has waived that argument in its opening brief. It's also jurisdictionally barred by section 10E of the act, because the union did not make that specific argument that the Eliases were not statutory employees. So at the point where it's essentially conceded that this was a labor organization and employees, there is no jurisdictional requirement with regard to employers. Because there is a question of jurisdiction, which is the board's authority to find an unfair labor practice and to order an entity to do something. And the only entity ordered to do anything in this case is the union. And there is the totally separate question of the merits of what is an unfair labor practice as defined in section 8 of the act. And I think some of the union's arguments would go to the hypothetical merits of an unfair labor practice. For example, we concede that if you have a public employer, for example, that there's no statutory duty under the act to provide hiring hall information with respect to that employer. But that goes to the definition of what is an unfair labor practice by a labor organization. And the reason I speculate that the union has framed it this way is because they want to place this burden on the board. Because there is no evidence in the record that there are any public employers or non-statutory employers that have an exclusive hiring hall relationship with the union. And that are covered by the Elias's good faith, genuine request for this hiring hall information. Which is discussed at length in the administrative law judge's decision as affirmed and adopted by the board. I'd also point out that as a general issue, board unfair labor practice proceedings are frequently bifurcated proceedings. So the question, which is really before the court here today, is whether there is unfair labor practice liability. Whether the union has committed an unfair labor practice. And whether the board's general order, which is a standard remedy or standard order in information request cases is within the board's remedial jurisdiction. There are also frequently secondary compliance proceedings where if there is any sort of question about the contours of the Elias's written information requests. Those could potentially be resolved in secondary compliance proceedings. It sounded like the union was concerned that that would subject it to potential contempt proceedings. Whereas, it seemed to be arguing, shouldn't the board make its order clear enough in the beginning so as to avoid that issue? Right, and I have to concede, contempt is a possibility once this court issues an order. But I think if you read the board's decision in order in full, which adopts all of the administrative law judge's reasoning. The board's order is reasonably clear. There's no evidence that public employer information or other information to that effect would be included in the order because the union has produced no evidence of that. What they've instead done is to make this procedural argument that the board somehow did not meet its jurisdictional evidentiary burden. I'd also point out if you had a hypothetical case where the Elias's had submitted these information requests. And a union had said, okay, here's this information. We're not going to provide these records because they go to a public entity or a non-statutory employer. And we don't have a duty of fair representation or no statutory duty to provide that information. That would very likely be a legitimate reason for not providing that. But the union did not do that in this case. They provided no explanation for not providing the bulk of the information. Other than privacy, right? Correct. The union president unilaterally cited the fact that he had a problem with providing addresses and phone numbers. And so that was the only rationale given. But as we point out in the brief, the union did not provide the bulk of the information, including any information at all in response to the Elias's second information request. So they did not even provide the names or the identities of the employers. So we would know here today whether there were any public employers. There was just this one unilateral statement that a single union official had a problem with the names and phone numbers. Which I would point out was contradicted by the union business agent who had prepared a list and was ready to hand it over to the Elias's when this other union official interceded. So at no point did the union try to justify to the Elias's why they were not providing this information by saying that entities were covered to which they did not have this duty of fair representation. I'd also just like to mention quickly the question of whether there's a six month limitation. Judge Friedland, as you pointed out, the two cases that the union cites in this brief just do not stand for that. There's not a line of board cases where the board has limited these requests to six months. In fact, board cases say the exact opposite. For example, you have the electrical workers local 24 case, which ordered the inspection of records going back ten years. Just to cite another example of presumably many, you have the bridge iron workers local 27 case, where the union was affirmatively ordered to produce 18 months of records. And that board decision was enforced by this court in an unpublished order. But as we point out, the reasoning is that employees have a right to know whether they're being treated fairly, or if there's just a negligent irregularity with the hiring hall, which is totally separate from the question of whether there is an independent unfair labor practice under which the union has been discriminating against employees or something like that. And Fisher Theater involved both types of claims at once, right? Correct, and that also addresses a jurisdictional issue, as we pointed out in the brief. The reason that the board dismissed part of the complaint in that case is because under section 8B2, it's only an unfair labor practice if the conduct is referring to a statutory employer. So again, it's not a jurisdictional question. It's a question of, once you have an entity which is regulated by the National Labor Relations Act and is a labor organization, whether certain conduct is an unfair labor practice. And if a union is performing certain conduct and the unfair labor practice requires assuring that there's a statutory employer, that's a merits issue. But again, there's no evidence here that there are any non-statutory employers. And even if there were, the only unfair labor practice that the board found was that there was a single action which was arbitrarily responding to these information requests. And many things went into the board's finding of that arbitrary conduct. Foremost, the fact that the union just did not provide any explanation for why it was not providing any of the information aside from the privacy claimed by the union president. I'd also point out, just quickly addressing the privacy concern. I understand the union to be making two discreet arguments. The first is this First Amendment, associational privacy, associational First Amendment right claim. And as we point out, this court has decided a very similar issue in the electrical workers local 497 case. And the second aspect of the privacy argument, I guess, is the question under the board's test, which incorporates Detroit Edison balancing into the test by having this illegitimate interest such as truly confidential material. That in this case, there just is no evidence of such a policy or of employees' expectation of confidentiality or any real reason for why this information was not provided and why the Eliases were not allowed to inspect what was going on with the hiring hall that they depend on for their livelihood. And I see that I'm at five minutes, so unless the court has any further questions for the board, I'll allow the interviewers. Thank you, counsel. Good morning, Aaron Solem for Gary Elias, may it please the court. I only wanted to add two quick points, unless the court has any questions for me, and I'll yield back the balance of my time. The first is, under jurisdiction, the Supreme Court in 1947 in Phelps Dodge, which we didn't cite in our brief, but is important to the arguments raised in the union's reply brief, that Gary Elias is not technically an employee under the statute. The Supreme Court decided in 1947 that the act protects employees or potential employees pre-hire, and that's 313 U.S. 177. In addition, I just also want to point out that the first request that was made by Mr. Elias pertained to a show that was not at the Tropicana. It pertained to a different employer, a show at the Venetian. The union disclosed the hiring hall information, in that you can find the disclosure at 128 through 122 of the supplemental record. And that's for the show, The Phantom of the Opera. So when the union claims that there's no evidence that it operated a hiring hall for any other employer but the Tropicana, well, they gave up hiring hall records that showed that they referred people to Phantom of the Opera, a show not at the Tropicana. And this answer was also incomplete, because it did not include the list status of the employees. Without the list status of the employees, there's no way for Mr. Elias to tell whether or not he was unfairly passed over, whether or not the referents were on the A list or the B list. Unless the court has any other questions, I'll sit down. Thank you, counsel. We'll give you a minute for rebuttal. We raised the statutory employer issue. In response, the board raised the question of whether he was an employee. And I just read you the statute that says, we agree, Mr. Elias was an employee vis-a-vis the Tropicana. But it's the board's burden to prove that there are other employers so that he would be an employee vis-a-vis them. You can be employee versus one versus the other. I want to address the privacy issue if I can, because that's really, from our point of view, the real problem here. If I may take just one, a couple extra seconds to do that. That is that the evidence in the record was that Daniel Cook said we've never provided names and addresses. That was not rebutted. And when- Why does that matter? Because the union says we have a privacy interest in protecting and a duty of fair representation, not to disclose. Addresses and phone numbers will tell you names, but people expect a privacy. And having heard the first case here today, things are different in 2017 than they were in the 1980s when the board said phone numbers are publicly available. You can get them anyway. Couldn't you do some kind of protective order with regard to this information, limit it to its use only in this case or to address this concern? That's the nub of our argument. That's what we tried to do in this case. And the- No, you didn't. You didn't offer this information and say we'll give you this information as long as you sign something that says you'll only use it to call them to investigate your claim. I don't think you did. At least you haven't said that. I'm sorry. We did do that. We made that very clear that rather than a protective order, what we said we would do is what we've done for everybody else who wants this access. What our process is, if a member wants to contact another referent or member on the list, you let us know, we'll get a hold of the other person, and if they- Okay. So let's assume that's not an okay remedy. Did you ever say we'll give you the information the board says you need to have, which is their contact information and their names, if you promise to only use it for this purpose? No. What we did was he was the one, and I want to read this reference, if I may, at the supplemental record. This is Mr. Elias testifying. The next relevant issue, this is in the April 24th, April 28th meeting. The next relevant issue that I remember was Daniel Cook told me that he had a problem with addresses and phone numbers, not again names. My reply to Mr. Cook, I just added a parenthetical, Mr. Elias had been a former officer- You're over your time, so you have five seconds to wrap up. My reply to Mr. Cook was that address and phone numbers were there because of the case law, but it was boilerplate. And he then said, and should he agree to put me through to reference via the dispatch system? In other words, in the past, referents have been dispatched, have called dispatch and said I want to talk to so-and-so, and they put me through. Okay. So that was the process. Thank you, counsel. Thank you. Thank you both sides for the arguments. The case is submitted. We're adjourned for the week.
judges: Clifton, Friedland, Gleason